IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THELEN REID & PRIEST LLP,** | No C 06-2071 VRW |
|     Plaintiff and Counterdefendant, | ORDER |
|     v | |
| **FRANÇOIS MARLAND,** | |
|     Defendant and Counterclaimant. | |

Thelen Reid & Priest LLP ("Thelen") seeks to dismiss the counterclaims in François Marland's answer pursuant to Fed R Civ P 12(b)(1) and (b)(6). Doc #17. In the alternative, Thelen asks the court to stay all consideration of Marland's counterclaims pending a determination of the validity of the parties' December 2002 agreement. Id. For the reasons discussed below, Thelen's motion to dismiss and request for a stay are DENIED.

I

Thelen contends that Marland's counterclaims are not ripe and do not adequately state a claim for relief. Since both of these challenges to the counterclaims require the court to assume

their allegations to be true, the following is a summary of the facts **as alleged in Marland's counterclaims**.

Marland hired Thelen to provide advice on how to capitalize upon knowledge of a secret agreement used by Credit Lyonnais illegally to purchase insurance assets and junk bonds from the California Department of Insurance ("DOI"). Doc #14 at 26. Thelen helped Marland incorporate an entity called RoNo LLC to protect his anonymity through the process. Id. Thelen then attempted to negotiate an agreement with DOI to retain Marland as an expert witness for an investigation and lawsuit against Credit Lyonnais. Id. This unsuccessful negotiation prompted the DOI to conduct its own investigation, greatly reducing the potential value of Marland's information. Id.

Anticipating the DOI would file its own lawsuit, Thelen hurriedly counseled Marland to file a qui tam lawsuit through RoNo LLC. Id at 27. Thelen and Marland signed a recovery splitting agreement in February 1999. This agreement contained an arbitration provision. Id. The DOI filed its lawsuit on the same day that Thelen filed Marland's qui tam lawsuit. Id.

Thelen subsequently changed strategies and sought to be hired as the lead counsel in DOI's lawsuit, promising to split its contingency fee with Marland under the same formula that would have been used for the qui tam recovery. Id at 28. Thelen and Marland entered into a June 1999 agreement which memorialized the new fee splitting arrangement. Id at 29. In September 2001, the parties signed an amendment to both the February 1999 and June 1999 agreements which reconciled the recovery arrangements to ensure that Marland would recover the same amount regardless which lawsuit

was ultimately successful. Id at 30. The September 2001 agreement also provided for a new counsel, selected by Thelen, to litigate RoNo LLC's qui tam action to prevent a conflict with Thelen's representation of the DOI. Id. Thelen, however, continued to serve as general counsel to RoNo LLC. Id.

Thelen always anticipated the litigation would involve "hundreds of witnesses on two continents, millions of pages of documents, complex regulatory issues and multiple criminal investigations and charges." Id. But Thelen began pressuring Marland to relinquish a greater share of the recovery to cover the costs of litigation shortly after signing the September 2001 agreement. Id. In July 2002 Thelen gave notice that it was terminating the February 1999 agreement to represent Marland and told Marland that this would exclude Marland from any recovery of Thelen's contingency fees from representing DOI. Id at 31. Thelen further provided Marland with inaccurate information and legal counsel regarding settlement negotiations, retaliation threats against Marland and Marland's obligation to produce a document proving Credit Lyonnais secret agreement. Id at 31-32.

Marland signed an amended agreement in December 2002 which reduced his recovery by one third and contained a global release of any claims, known or unknown, against Thelen. Id at 33. Marland alleges he was coerced into signing the agreement through intentional misrepresentations and inadequate respresentation of his interests by Thelen. Id at 32, 35-38, 41-42. Additionally, the December 2002 agreement was conditioned upon approval by the Commissioner of DOI, which was never obtained. Id 33. Marland seeks to enforce his rights pursuant to the arbitration clause in

3

the June 1999 agreement.  Doc #13, Ex A.

Thelen seeks to have this court enjoin the arbitration proceedings and issue declaratory judgments that would invalidate Marland's claims.  Doc #1.  Marland responded by filing counterclaims asserting claims similar to those originally filed in the arbitration proceedings that Thelen seeks to enjoin.  Doc #14, Ex A.  These counterclaims include breach of fiduciary duty, breach of contract, bad faith denial of a contract, intentional misrepresentation, and negligence.  Doc #14 at 35-43.

Marland explicitly conditions each of his counterclaims "in the event that Marland's second affirmative defense (failure to join an indispensable party) is dismissed and Marland's and RoNo's demand for arbitration is permanently stayed or dismissed for any reason."  Doc #14 at 25.  But Marland earlier asserts in the counterclaim that he is "prepared to litigate that issue in whichever forum (arbitration or court) is most appropriate and expeditious."  Doc #14 at 24.

Thelen asks the court to dismiss these conditional counterclaims.  Doc #17.  The court discusses separately the motions to dismiss based on Fed R Civ P 12(b)(1) and (b)(6) below.

II

Thelen seeks to dismiss Marland's counterclaims pursuant to Fed R Civ P 12(b)(1) for lack of subject matter jurisdiction.  Thelen alleges that the lack of subject matter jurisdiction appears on the face of Marland's counterclaims because the conditional nature of his counterclaims make them hypothetical and nonjusticiable.  Doc #17.  Specifically, Thelen argues that the counterclaims are not ripe for adjudication because they depend

4

upon the court's future determination of the validity of the December 2002 agreement.

The ripeness doctrine prevents premature adjudication of cases before the parties have a concrete interest in the outcome. The ripeness inquiry requires the court to consider both the fitness of the issues for judicial resolution and the hardship to parties of withholding judicial consideration. <u>Abbott Laboratories v Gardner</u>, 387 US 136, 148-49 (1967).  In reviewing a facial challenge to a pleading, the court must consider the allegations of the counterclaims as true and in the light most favorable to the non-moving party.  <u>Gould Elecs, Inc v United States</u>, 220 F3d 169, 179 (3d Cir 2000).  By that standard Marland's counterclaims are clearly fit for judicial resolution because they seek redress for well documented disputes in the past.

Claims which are contingent upon future action by the parties involved are considered unripe, preventing judicial consideration of a hypothetical controversy.  <u>Scott v Padadena Unified School District</u>, 306 F3d 646, 662 (9th Cir 2002).  The contingency of Marland's counterclaims upon the ability to arbitrate in another forum does not diminish the suitability of seeking redress for past torts and contract breaches in this forum. While Marland partially conditions seeking redress in this forum upon preliminary rulings by this court (Doc #14 at 25), his claims are not based on any future actions by the parties which may or may not occur.  Marland's claims present a live case or controversy; they merely retain the possibility of litigating these disputes in another forum.

Additionally, the factual record concerning Marland's counterclaims is well settled.  In fact, the counterclaims' factual basis overlaps significantly with the factual recitals of Thelen's complaint.  The factual inquiry into which agreement controls the parties' rights and obligations pertains to both Thelen's attempt to stay arbitration and Marland's claims for damages in tort and contract law.  Marland's counterclaims are as fit for judicial inquiry as Thelen's request for a declaratory judgment because they both involve the same well documented series of past agreements.

Thelen argues that Marland will not suffer any hardship from dismissal of his counterclaims because they will either be arbitrated if the December 2002 agreement is invalid or be barred by the mutual release provision if the December 2002 agreement is valid.  As discussed earlier, the court must consider each allegation in the counterclaim as true for this facial challenge.  Accepting the allegations of the counterclaim as true, the court finds the counterclaims are justiciable because they present a live case or controversy regardless of the December 2002 mutual release provision's validity.

First, Thelen argues that Marland's counterclaims are hypothetical because will not be litigated in this forum if the December 2002 agreement is found to be unenforceable.  Earlier in the counterclaim, however, Marland states he "is prepared to litigate that issue in whichever forum (arbitration or court) is most appropriate and expeditious."  Doc #14 at 24.  Viewing all allegations in the light most favorable to the non-moving party in this facial challenge, the court presumes Marland will continue to

litigate his counterclaims in this court if it is most appropriate and expeditious.

Second, two of the counterclaims remain live controversies even if the December 2002 agreement and its mutual release provision are found to be enforceable.  Marland's first counterclaim alleges that Thelen breached its fiduciary duty owed to Marland beginning in 1998 and continuing through 2005, well beyond the December 2002 agreement and its release provision.  Doc #14 at 35.  Marland's fifth counterclaim alleges that Thelen was negligent throughout its representation of Marland, including representation following the December 2002 agreement as alleged in paragraph 34 of the counterclaim.  Doc #14 at 32-33.  Regardless of the court's determination of the validity of the December 2002 agreement and its mutual release provision, the continued breach of Thelen's fiduciary duty and continued negligence beyond December 2002 is justiciable.

Accordingly, dismissal would bring hardship to Marland by denying an opportunity to litigate his counterclaims in the forum of his choice.

The court finds the counterclaims are ripe because they are fit for judicial resolution and dismissal would present a hardship to Marland.

III

Thelen seeks to dismiss Marland's counterclaims pursuant to Fed R Civ P 12(b)(6) for failure to state a claim for which relief can be granted.  In responding to a 12(b)(6) motion the court must assume all factual allegations in the counterclaims are

7

true and construe them in the light most favorable to the non-moving party.  <u>Cahill v Liberty Mutual Insurance</u>, 80 F3d 336, 337-38 (9th Cir 1996).  The motion will be denied if Marland can prove any set of facts which would support a counterclaim and entitle him to relief.  <u>Id</u>.

        Thelen argues that "Marland's counterclaims are self-canceling in nature and, therefore, fail to state a claim for which relief can be granted."  Doc #26 at 3.  This assumes that the counterclaims will either be withdrawn from this forum and arbitrated if the December 2002 agreement is invalid or if the December 2002 agreement is valid the claims are subject to the mutual release provision.  But Marland conditions his counterclaims on more than just the inability to seek redress through arbitration proceedings.  The counterclaims vest upon both the dismissal or permanent stay of arbitration <u>and</u> the dismissal of Marland's second affirmative defense which seeks to join RoNo LLC as an indispensable party.  Doc #14 at 25.  This indicates that Marland will continue to litigate if the court finds the December 2002 agreement unenforceable but Marland is successful in joining RoNo LLC.  Marland's counterclaims are not necessarily "self-cancelling" because there is a circumstance in which the counterclaim will be litigated and not barred by the mutual release provision of December 2002.

        Additionally, Marland asserts that he "is prepared to litigate that issue in whichever forum (arbitration or court) is most appropriate and expeditious."  Doc #14 at 24.  This indicates the counterclaims are in fact conditional upon the dismissal or permanent stay of arbitration <u>only if</u> arbitration is still

8

perceived by Marland as the most appropriate and expeditious forum.

Since Marland asserts a set of facts that entitle him to relief in each of his five counterclaims and indicates he is prepared to seek relief in this forum, he has adequately stated a claim for relief.

## IV

Finally, the court declines to stay all proceedings related to Marland's counterclaims. Thelen contends that validity of the December 2002 agreement would preclude all of Marland's counterclaims. Doc #17 at 13. (As discussed earlier, however, two of Marland's counterclaims allege conduct after the December 2002 agreement and its mutual waiver provision.) Since the counterclaims encompass many of the same or similar issues as Marlan's counterclaims, the gains to judicial economy from staying consideration do not justify delaying consideration of Marlan's properly pled counterclaims. Should the parties mutually agree that the court should first determine the validity of the December 2002 agreement, the court will proceed in a bifurcated manner.

## V

For the reasons discussed above, Thelen's motions to dismiss based on Fed R Civ P 12(b)(1) and (b)(6) and Thelen's request for a stay are DENIED.

*//*
*//*
*//*
*//*
*//*
*//*

9

Additionally, the parties will comply with the following schedule.  Simultaneous letter briefs regarding the applicability of the Hague Convention will be filed on September 12, 2006.  All phase one document discovery will be completed by October 13, 2006.  All phase one depositions will be completed by February 2, 2007.  A hearing for dispositive motions will be held on April 5, 2007, at 2:00 PM and a case management conference will be held on May 15, 2007, at 9:00 AM.

SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge